<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **GILBERT WRAITH**, <br><br> Plaintiff, <br><br> v. <br><br> **WAYFAIR, INC.,** *et al.*, <br><br> Defendants. | Civil Action No. 20-6054 (ZNQ) (DEA) <br><br> **OPINION** |

<u>**QURAISHI, District Judge**</u>

**THIS MATTER** comes before the Court upon a Motion for Summary Judgment filed by Defendants Wayfair Inc. and Wayfair LLC (collectively, "Defendants"). ("Motion", ECF No. 29.) Defendants filed a Brief in Support of their Motion ("Moving Br.", ECF No. 29-1) and a Statement of Material Facts ("SMF", ECF No. 29-35.) Plaintiff Gilbert Wraith ("Plaintiff") filed a Brief in Opposition to Defendants' Motion ("Opp'n", ECF No. 32) along with his Answer to Defendants' SMF ("Answer to SMF", ECF No. 32-5) and Counter Statement of Material Facts ("CSMF", ECF No. 32-4). Defendants filed an Answer to Plaintiff's CSMF ("Answer to CSMF", ECF No. 36) as well as a Reply to Plaintiff's Opposition. ("Reply", ECF No. 35.)

The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will GRANT Defendants' Motion for Summary Judgment.

## I. BACKGROUND AND PROCEDURAL HISTORY

### A. THE PARTIES

Defendants are companies with offices and facilities located at 48 Station Road, Cranbury, New Jersey. Plaintiff is Defendants' former employee that was employed as a Warehouse Associate.

### B. PROCEDURAL HISTORY

This action was removed to this Court on May 19, 2020, from the Superior Court of New Jersey, Middlesex County. (ECF No. 1.) The Complaint alleges that Defendants violated the New Jersey Workers' Compensation Act ("WCA"), New Jersey Law Against Discrimination ("NJLAD"), and New Jersey Paid Sick Leave Law ("PSLL") following Plaintiff's on-the-job injury to his rotator cuff. (*See generally,* "Compl.", ECF No. 1.) The deadline to complete fact discovery was July 30, 2021. (ECF No. 18.) The parties engaged in mediation that proved unsuccessful. Thereafter, on June 27, 2022, Defendants filed the instant Motion for Summary Judgment. No Motion to Dismiss was ever filed.

### C. UNDISPUTED FACTS

Plaintiff is a 37-year-old man who began his employment at Defendants' warehouse facility located in Cranbury, New Jersey on October 1, 2019. (SMF ¶ 1; Answer to SMF ¶ 1.) Plaintiff was employed as a Warehouse Associate earning $16.50 per hour. (*Id.*; *Id.*) The job description for the Warehouse Associates states that associates must "be comfortable repeatedly lifting up to 75 pounds unassisted and maneuvering product 150+ pounds unassisted or via team life," and "be able to work on warehouse floor 8 hours a day or more." (*Id.* ¶ 2; *Id.* ¶ 2.) At orientation, Plaintiff received and acknowledged Defendants' Employee Handbook, as well as the Company's Code of Business Conduct and Ethics. (*Id.* ¶ 4; *Id.* ¶ 4.)

The Wayfair Employee Guide–Warehouse Addendum contains a Paid Time Off ("PTO") and Unpaid Time Off ("UPTO") policy for warehouse workers such as Plaintiff. (*Id.* ¶ 6; *Id.* ¶ 6.) Level 1 Non-Exempt Warehouse Employees with less than 1 year of service accrue 6.66 hours of PTO per month from January through December. (*Id.* ¶ 7; *Id.* ¶ 7.) Additionally, all Level 1 Non-Exempt Warehouse Employee receive a total of 24 hours of unpaid time off per calendar year for pre-scheduled and approved unpaid time off. (*Id.* ¶ 8; *Id.* ¶ 8.)

On Monday, February 3, 2020, Plaintiff suffered an injury to the rotator cuff of his right shoulder. (CSMF ¶ 2; Answer to CSMF ¶ 2.) Plaintiff reported his workers' compensation injury to Defendants. (*Id.* ¶ 3; *Id.* ¶ 3.) According to Plaintiff, his shoulder "just stopped working, it was extremely painful . . . [and he] couldn't lift [his] shoulder." (*Id.* ¶ 4; *Id.* ¶ 4.) The injury occurred when Plaintiff was sliding a box from a trailer onto a pallet. (*Id.* ¶ 5; *Id.* ¶ 5.) By February 5, 2020, Plaintiff had "limited ability to drive" and could not "reach for anything more than a foot away from [his] body[]", or hold "any weight" with his right arm. (SMF ¶ 16; Answer to SMF ¶ 16.)

Following his injury, Plaintiff was examined by a doctor who instructed Plaintiff that he not work. (CSMF ¶ 14; Answer to CSMF ¶ 14.) Plaintiff's workers' compensation claim for benefits was filed and approved by Defendants on February 6, 2020. (*Id.* ¶ 19; *Id.* ¶ 19.) On February 7, 2020, Plaintiff returned to the same doctor for a follow-up visit wherein he was referred for an MRI. (*Id.* ¶¶ 17, 21; *Id.* ¶¶ 17, 21.) After the follow-up visit, Plaintiff returned to the warehouse with his medical paperwork and provided it to Jasmeet Kaur ("Kaur"), the Talent Management Associate. (*Id.* ¶ 18; *Id.* ¶ 18; SMF ¶ 22; Answer to SMF ¶ 22.) After Plaintiff shared the doctor's note, Kaur sent an email providing Plaintiff with his Notice of Eligibility and Rights & Responsibilities under the Family and Medical Leave Act, informed Plaintiff that he was

3

ineligible due to his brief service time, and provided Plaintiff with the balance of paid time off and unpaid time. (SMF ¶ 22; Answer to SMF ¶ 22.) The email states that, as of February 7, 2020, Plaintiff had 9.56 hours of paid time off (including paid sick leave) and 3 days of unpaid time off remaining. (*Id.* ¶ 23; *Id.* ¶ 23.) Between February 4 and February 14, 2020, Plaintiff exhausted his remaining paid time off (including his paid sick leave), as well as his 3 days of unpaid time off. (*Id.* ¶ 28; *Id.* ¶ 28.)

On Thursday, February 13, 2020, Plaintiff had an MRI taken of his shoulder, and on Friday, February 14, 2020, received confirmation that he had a rotator cuff injury. (CSMF ¶ 30; Answer to CSMF ¶ 30.) Plaintiff was later additionally diagnosed on February 27, 2020 with shoulder impingement syndrome and received steroid shots for treatment. (*Id.* ¶ 31; *Id.* ¶ 31.)

At the same time, Defendants had positions available that did not require heavy lifting such as "running"[1] and "scanning"[2], often referred to as "light duty". (*Id.* ¶¶ 43–44, 49; *Id.* ¶¶ 43–44, 49.) Warehouse associates such as Plaintiff labor share, rotating through these various duties, and relocate to where there is work to be done. (*Id.* ¶ 50; *Id.* ¶ 50.) Warehouse associates may scan for an entire day—in fact, Defendants have employed employees who "did nothing but scanning." (*Id.* ¶¶ 51–52; *Id.* ¶¶ 51–52.) Defendants have also had employees out with injuries and then return after they have recovered from those injuries. (*Id.* ¶ 53; *Id.* ¶ 53.) Defendants received approximately 20 light duty requests in the past two years, some of which were granted. (*Id.* ¶ 54; *Id.* ¶ 54.) Light duty assignments have also included sorting of boxes, counting, sweeping of the buildings, and removal of garbage. (*Id.* ¶ 55; *Id.* ¶ 55.)

---

[1] The runner position consisted of operating a machine that moved products back and forth. (CSMF ¶ 43; Answer to CSMF ¶ 43.)
[2] Scanning occurs once boxes are removed from tailers and scanned into the system. (*Id.* ¶ 48; *Id.* ¶ 48.)

On February 18, 2020, Defendants terminated Plaintiff's employment. (*Id.* ¶ 62; *Id.* ¶ 62.) At the time of his termination, Plaintiff was informed that he was eligible for re-hire when he was able to return. (SMF ¶ 41; Answer to SMF ¶ 41.) On May 4, 2020, Plaintiff visited MidJersey Orthopaedics and was cleared to return to full activities. (*Id.* ¶ 46; *Id.* ¶ 46.) Plaintiff never contacted Defendants or Talent Management to inquire about getting his old job back. (*Id.* ¶ 47; *Id.* ¶ 47.)

## II. JURISDICTION

The Court has original jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.00.

## III. LEGAL STANDARD

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 248).

"In evaluating the evidence, the Court must consider all facts and their logical inferences in the light most favorable to the non-moving party." *Rhodes v. Marix Servicing, LLC*, 302 F. Supp. 3d 656, 661 (D.N.J. 2018) (citing *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002)). "While the moving party bears the initial burden of proving an absence of a genuine dispute of material fact, meeting this obligation shifts the burden to the non-moving party to 'set forth specific facts showing that there is a genuine [dispute] for trial.'" *Id.* (quoting *Anderson*, 477 U.S. at 250).

"Unsupported allegations, subjective beliefs, or argument alone . . . cannot forestall summary judgment." *Read v. Profeta*, 397 F. Supp. 3d 597, 625 (D.N.J. 2019). "Thus, if the nonmoving party fails 'to make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be no genuine issue of material fact.'" *Id*. (quoting *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quotation marks omitted)). "In considering the motion, the Court 'does not resolve factual disputes or make credibility determinations.'" *Rhodes*, 302 F. Supp. 3d at 661 (quoting *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995)).

## IV. DISCUSSION

### A. NJLAD: DISABILITY DISCRIMINATION AND FAILURE TO ACCOMMODATE

#### 1. Disability Discrimination

Defendants first seek summary judgment on Plaintiff's NJLAD disability discrimination and failure to accommodate claims. (Moving Br. at 12–24.) Specifically, Defendants argue that Plaintiff has not established a prima facie case of disability discrimination (*id.* at 13) and Plaintiff never requested an accommodation for his disability (*id.* at 20).

The NJLAD prohibits an employer from discriminating in the "terms, conditions, or privileges of employment" on the basis of a person's disability, N.J. Stat. Ann. § 10:5-12(a), "unless the handicap precludes the performance of employment," *Failla v. City of Passaic*, 146 F.3d 149, 153 (3d Cir.1998) (citing N.J. Stat. Ann. § 10:5-4.1). To state a prima facie cause of action for disability discrimination under the NJLAD, the employee must prove (1) he is disabled or perceived to be disabled within the meaning of the NJLAD; (2) he was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation by the employer; (3) he suffered an adverse employment action; and (4) the employer sought someone

6

else to perform the same work after he left. *Muller v. Exxon Research & Eng'g Co.*, 345 N.J. Super. 595, 602 (N.J. Super. Ct. App. Div. 2001)) (citing *Clowes v. Terminix Int'l, Inc.*, 109 N.J. 575, 538 (N.J. 1988)).

It is undisputed that Plaintiff's rotator cuff injury rendered him disabled within the meaning of the NJLAD. The crux of the parties' dispute is whether Plaintiff was otherwise qualified to perform the essential functions of the job, with or without a reasonable accommodation by the employer. Under the NJLAD, an employer must "make a reasonable accommodation to the limitations of an employee [] who is a person with a disability, unless the employer can demonstrate that the accommodation would impose an undue hardship." *Stewart v. County of Salem*, 274 F. Supp. 3d 254, 260 (D.N.J. 2017). However, the NJLAD "permits an employer to terminate an employee who is unable to perform the job because the employee's disability in fact impedes job performance." *Andersen v. Exxon Co. USA*, 89 N.J. 483, 496-97 (1982)); *see also Zive v. Stanley Roberts, Inc.*, 182 N.J. 436, 446 (2005) (recognizing that the NJLAD "prevents only unlawful discrimination against disabled individuals; it does not prevent the termination or change of employment of any person who 'is unable to perform adequately the duties of employment[.]'" (citation omitted)); *Svarnas v. AT&T Commc'n*, 326 N.J. Super. 59, 73 (App. Div. 1999) ("nothing in the LAD is construed to prevent the termination of any person who in the opinion of the employer, reasonably arrived at, is unable to perform adequately the duties of employment.")

Here, Defendants argue that Plaintiff was unable to perform the functions of a Warehouse Associate enumerated in the job description and Employee Handbook. (Moving Br. at 14.) Defendants also cites Plaintiff's medical records from his doctors' notes stating that Plaintiff "may not return to work" following his injury. Plaintiff, on the other hand, does not dispute his doctors'

notes but instead argues that Defendants could have accommodated his injury by placing him on "light duty," which was less physically demanding than his initial Warehouse Associate position. (Opp'n at 14–16.)

"Whether a particular function is essential is a factual determination that must be made on a case by case basis." *Skerski v. Time Warner Cable Co.,* 257 F.3d 273, 279 (3d Cir. 2001) (quoting EEOC Interpretive Guidance on Title I of the Americans with Disabilities Act, 29 C.F.R. pt. 1630, App. 1630.2(n) (2000)). The term "essential functions" is defined as:

> (1) In general. The term essential functions means the fundamental job duties of the employment position the individual with a disability holds or desires. The term "essential functions" does not include the marginal functions of the position.
> (2) A job function may be considered essential for any of several reasons, including but not limited to the following:
>  (i) The function may be essential because the reason the position exists is to perform that function;
>  (ii) The function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed; and/or
>  (iii) The function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function.
> (3) Evidence of whether a particular function is essential includes, but is not limited to:
>  (i) The employer's judgment as to which functions are essential;
>  (ii) Written job descriptions prepared before advertising or interviewing applicants for the job;
>  (iii) The amount of time spent on the job performing the function;
>  (iv) The consequences of not requiring the incumbent to perform the function;
>  (v) The terms of a collective bargaining agreement;
>  (vi) The work experience of past incumbents in the job; and/or
>  (vii) The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n).

When considering these factors with the parties' arguments and proof in support of those arguments, Defendants have shown there is no genuine dispute as to any material fact that Plaintiff was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation by the employer.  First and foremost, it is undisputed that Plaintiff's job description includes that Warehouse Associates "[m]ust be comfortable repeatedly lifting up to 75 pounds unassisted and maneuvering product 150+ pounds unassisted or via team lift" and must "be able to work on warehouse floor 8 hours a day or more."  (SMF ¶ 2; Answer to SMF ¶ 2; "Pl. Dep.", Ex. AA, 18:10-15, 19:14-22, "Job Description", Ex. B, at 1.)  Plaintiff's medical records demonstrate that he could not perform these essential functions of his job.  Indeed, every medical record Plaintiff provided between February 4 and May 3 states that he "may not return to work" or was totally disabled, and none of them indicated an estimated return to work date. (Silverman Cert., "Dr. Notes", Exs. L, N, R, T, U, V).  Beyond Plaintiff's doctors' notes, Plaintiff's own deposition testimony establishes that he could not grab "anything more than one foot away from [his] body" (Pl. Dep. 110:5-13), lift "more than ten pounds" (*id.* 110:20-111:12), or lift weight more than a cell phone (*id*. 115:23-116:4).  Plaintiff's testimony and contemporaneous documents memorialize that this pain "felt like [his] arm being ripped out of [his] shoulder [and was] [p]robably the worst feeling [he] ever had," causing him to be "unable to work due to this pain." (*Id*. 115:14-22).  Even though Plaintiff requested to be placed on light duty, it is abundantly clear that Plaintiff was not qualified to complete the required tasks included in his job description, even with the accommodation of indefinite light duty. *See, e.g., Stewart,* 274 F. Supp. 3d at 262 (citing *Raspa v. Office of Sheriff of County of Gloucester,* 191 N.J. 323, 338 (N.J. 2007) (holding that, because "the description of the position of county corrections officer was controlling" and the "plaintiff's disability. . . required indefinite light duty", it "would prevent him from performing

9

that particular job." Therefore, the "plaintiff, as a matter of law, was not qualified as a county corrections officer.")); *Grau v. Ahs Hosp. Corp.*, Civ. No. 3959-15T1, 2017 WL 2391520, at *6 (N.J. App. Div. June 2, 2017) (affirming grant of summary judgment where a plaintiff was unable to perform the essential duties of her job given that "because of her shoulder injury, plaintiff could no longer lift, push, or pull the amount of weight necessary to complete her assigned tasks."); *see also Domurat v. Ciba Specialty Chemicals Corp.*, 353 N.J. Super. 74, 92 (App. Div. 2002) (stating, "[n]othing in the LAD protects employees from termination if they are not performing the essential functions of the employer's legitimate expectations."). Accordingly, the Court will grant Defendants' Motion for Summary Judgment with respect to Plaintiff's disability discrimination claim.

### 2. Failure to Accommodate

Defendants next seek summary judgment on Plaintiff's failure to accommodate claim. (Moving Br. at 19.) Specifically, Defendants argue that Plaintiff never requested an accommodation, Plaintiff could nevertheless not perform the essential functions of the job with or without a reasonable accommodation, there were no available positions that would otherwise accommodate Plaintiff, and indefinite medical leave would be unreasonable. (*Id.* 20–24.) Plaintiff, on the other hand, argues that Defendants could have reasonably accommodated his disability through medical leave or light duty. (Opp'n at 16.)

In order to prevail on a failure to accommodate claim under the NJLAD, a plaintiff must establish four elements: (1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated. *Armstrong v. Burdette Tomlin Mem. Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006) (citing *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 317-320 (3d Cir. 1999); *Tynan v. Vicinage 13*, 351 N.J. Super. 385 (2002)). While there are no magic words

10

to seek an accommodation, the employee "must make clear that . . . assistance [is desired] for his or her disability." *Tynan*, 351 N.J. Super. at 400 (App. Div. 2002) (quoting *Jones v. United Parcel Serv.*, 214 F.3d 402, 408 (3d Cir. 2000)). In *Tynan*, the Appellate Division held "[w]e agree that under the law, an employee *must* request an accommodation . . . ." *Id*. at 399 (emphasis added). Further, to show that an employer failed to participate in the interactive process, a disabled employee must demonstrate: (1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for his disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith. *Id.* at 400-01 (citing *Taylor*, 184 F.3d at 319-20).

Here, the only two reasonable accommodations argued by the parties are "light duty" and medical leave. Importantly, it is undisputed that Plaintiff never provided a timeline for which he would require either light duty or medical leave. On the contrary, the only information provided by Plaintiff was his doctor notes that stated Plaintiff "May Not Return to Work," and no date was provided by which Plaintiff was expected to return to work. (Dr. Notes, Exs. L, N, R, T, U, V).

"[T]he phrase 'reasonable accommodation' refers to the duty of an employer to attempt to accommodate the physical disability of the employee, not to a duty on the part of the employer to acquiesce to the disabled employee's requests for certain benefits or remuneration." *Jones v. Aluminum Shapes, Inc.*, 339 N.J. Super. 412, 426 (App. Div. 2001). As the Appellate Division has stated:

> the [NJ]LAD does not require an employer to create a permanent part-time position for a disabled employee if no suitable full-time position exists. Nor does the [NJ]LAD require an employer to create a permanent light-duty position to replace a medium-duty one. Rather, an employer must simply make all reasonable

11

> accommodations to an employee returning from disability leave and allow the employee a reasonable time to recover from his injuries.

*Muller*, 345 N.J. Super. at 608.

As explained above, the Court has already held that—given Plaintiff's inability to provide an expected timeline for his recovery—indefinite light duty is not a reasonable accommodation. *Raspa,* 191 N.J. at 338 (holding that "indefinite light . . . was not reasonable under the [NJ]LAD.").

Moreover, New Jersey courts and courts in the Third Circuit have consistently held that "indefinite leave is not recognized as a reasonable accommodation." *Fogleman v. Greater Hazleton Health All.*, 122 Fed. Appx. 581, 586 (3d Cir. 2004); *Svarnas*, 326 N.J. Super. at 79 ("an indefinite unpaid leave is not a reasonable accommodation, especially where the employee fails to present evidence of the expected duration of [his] impairment."); *Potash v. Hunterdon Med. Ctr.*, Civ. No. 1133-08T3, 2009 WL 2253167, at *6 (App. Div. Jul. 30, 2009) (affirming grant of summary judgment on failure to accommodate claim where the record established that the plaintiff was not able to perform the duties of her job function when terminated and would not be able to perform such duties for a long period of time). Plaintiff's doctors' notes that simply state that Plaintiff "May Not Return to Work" are demonstrative of an indefinite leave of absence, an accommodation that employers are not expected to make. *See Pizzo v. Lindenwold Bd. of Educ.*, Civ. No. 13-3633, 2015 WL 1471943, at *11 (D.N.J. Mar. 31, 2015) (granting employer summary judgment because, according to the plaintiff's doctor's note, her absence would be indefinite and an indefinite medical leave is not a reasonable accommodation); *see also Cartagena v. Temple Univ. Hosp.*, 389 F. Supp. 3d 341, 349 (E.D. Pa. 2019) (finding that a doctor's note requiring the plaintiff to remain out of work without an expected return date constitutes indefinite leave and is not a reasonable accommodation).

In sum, the NJLAD does not require an employer to accommodate an employee with light-duty assignments, indefinite part-time work schedules, elimination of essential job function or creation of new position. *See Muller*, 345 N.J. Super. at 606. Although Plaintiff argues that Defendants did not engage in the interactive process, an employer is not obligated to engage in an interactive process and to accommodate a disabled employee where the employee's "disability reasonably precludes the performance of the particular employment." *Raspa*, 191 N.J. at 337 (quoting N.J.S.A. 10:5-4). Thus, Plaintiff's assertion that Defendants did not engage in an interactive process is misplaced because the Court has found that Plaintiff's injury precluded his performance of his particular employment. Accordingly, the Court will grant Defendants' Motion for Summary Judgment with respect to Plaintiff's failure to accommodate claim.

    **B.    WORKERS' COMPENSATION**

Defendants next seek summary judgment on Plaintiff's workers' compensation retaliation claim. (Moving Br. at 25.) Specifically, Defendant argue that there is no evidence that they discharged Plaintiff for applying for or seeking workers' compensation benefits but instead, quickly worked with Plaintiff to ensure that his injury was properly reported and to provide him with workers' compensation benefits. (*Id.*) Plaintiff on the other hand argues that Defendants violated the anti-retaliatory provisions of the workers' compensation law by discharging him following his injury, while on leave. (Opp'n at 22–23.) Specifically, Plaintiff argues that Defendants violated N.J.S.A. 34:15-39.1 which provides that "[i]t shall be unlawful for any employer or his duly authorized agent to discharge or in any other manner discriminate against an employee as to his employment because such employee has claimed or attempted to claim workmen's compensation benefits from such employer . . . ." (*Id.* at 22.)

To state a prima facie case for a claim of workers' compensation retaliation, Plaintiff must prove (1) that he made or attempted to make a workers' compensation claim, and (2) that he was

13

discharged or discriminated against in retaliation for making the claim. *See Cerracchio v. Alden Leeds, Inc.*, 223 N.J. Super. 435, 442-43 (App. Div. 1988). In applying this provision, courts require a causal nexus between the workers' compensation claim and the employee's discharge. *See Carter v. AFG Indsts., Inc.*, 344 N.J. Super. 549, 557 (N.J. Super. Ct. Law Div. 2001).

Here, it is undisputed that Plaintiff made a workers' compensation claim, satisfying the first element. A dispute arises, however, as to whether he was discharged or discriminated against in retaliation for making the claim. Here, Plaintiff specifically points to two instances that he claims are evidence of Defendants' retaliation against his workers' compensation claim. Namely, that Ms. Kaur, a human resources representative, told him that "workers' comp is NOT a protected leave" (CSMF ¶ 24; ECF No. 32-3, "Pl. Decl.", ¶ 11) and that when he requested to work on light duty, his supervisor told him that there was no light duty available (CSMF ¶¶ 9–13). Following these incidences, "he knew this from the way this was told to him, that they were not there to comfort him, but rather 'if you're useless to us, you're gone.'" (*Id.* ¶ 13.) Defendants argue there is no such nexus and summary judgment should be granted. Defendants explain that Plaintiff was terminated because Defendants limit leaves of absence to Level 1 Non-Exempt Warehouse Employees—such as Plaintiff—to 6.66 hours of PTO per month from January through December (SMF ¶ 7; Answer to SMF ¶ 7) and a total of 24 hours of unpaid time off per calendar year for pre-scheduled and approved un-paid time off (*Id.* ¶ 8; *Id.* ¶ 8). Plaintiff was discharged after he exhausted his time off.

To oppose summary judgment, the non-movant must set forth specific facts showing that a genuine issue of material fact exists. It is well-settled that the non-movant cannot satisfy this duty through speculation or conclusory allegations. *Ridgewood Bd. of Educ. v. N.E. for M.E.*, 172 F.3d 238, 252 (3d Cir. 1999). *Accord GE Com. Distrib. Fin. Corp. v. Great Cove Marina, Inc.*,

Civ. No. 05-4661, 2008 WL 4513607, at *1 (D.N.J. Sept. 30, 2008) ("the non-moving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment"). In addressing an attempt to defeat a workers' compensation claim by summary judgment, courts in this district have observed that "speculative allegations are insufficient to establish a causal connection between an employee's claim for worker compensation benefits and his termination." *Gomez v. Con-Way Cent. Exp. Inc.*, Civ. No. 06-5352, 2009 WL 799243, at *12 (D.N.J. Mar. 24, 2009) (quoting *Griesbaum v. Aventis Pharmaceuticals*, Civ. No. 04-1726, 2006 WL 2796160, at *5 (M.D. Pa. Sept. 25, 2006)).

Plaintiff theorizes that Defendants violated the Workers' Compensation Act by not giving him light duty, telling him that "workers' comp is NOT a protected leave" and ultimately terminating him two weeks after his injury. However, Plaintiff sets forth no facts that could create a genuine issue as to whether Defendants discriminated against him because of his workers' compensation claim. *See id.* at *13 (holding that no genuine issue of material fact existed where the plaintiff only theorized that the defendant retaliated against him but had no record to support his claim).

All the correspondence and oral communications between the parties were discussed above. Nowhere is there any document or remark by Defendants showing that it was acting against Plaintiff for filing a workers compensation claim. *Id.* Plaintiff sets forth no facts whatsoever suggesting that Defendants retaliated to terminate him in light of his workers' compensation claim. *Id.* Plaintiff offers speculation, but provides no evidence to support his contention. *Id.* (granting summary judgment because the plaintiff relied solely on speculation in his workers' compensation retaliation claim). In fact, it is undisputed that Defendants actually *helped* Plaintiff to ensure that his injury was properly reported and to provide him with workers' compensation benefits. (SMF

15

¶ 15; Answer to SMF ¶ 15; Pl Dep., 58:3-13; ECF No. 29-31, "Weber Dep.", 61:17-62:4; Silverman Cert., Ex. M).

Plaintiff's argument that Kaur's email is evidence of retaliatory animus is also unpersuasive. New Jersey courts have consistently held that workers' compensation is not a protected leave and have specifically rejected the argument that an "employer had a duty to hold [employees with workers' compensation claims] job open until [they] were able to return to work." *Malone v. Aramark Services, Inc.*, 334 N.J. Super. 669, 676 (N.J. Sup. Ct. 2000) (citing *Galante v. Sandoz*, 192 N.J. Super. 403 (Law Div. 1983), *aff'd* 196 N.J. Super. 568 (App. Div. 1984).

Lastly, Plaintiff maintains that he was terminated for filing a workers' compensation claim. The communications between Plaintiff and Defendants do not support this proposition. Defendants clearly articulated its policy to Plaintiff (SMF ¶ 22; Answer to SMF ¶ 22) that leaves of absence were limited to 6.66 hours of PTO per month from January through December (*id.* ¶ 7; *id.* ¶ 7) and a total of 24 hours of unpaid time off per calendar year for pre-scheduled and approved un-paid time off (*id.* ¶ 8; *id.* ¶ 8). It is undisputed that, between February 4 and February 14, 2020, Plaintiff exhausted his remaining paid time off (including his paid sick leave), as well as his 3 days of unpaid time off. (*Id.* ¶ 28; *Id.* ¶ 28.) Pursuant to his doctors' notes, Plaintiff also failed to provide Defendants with an expected return date. Nothing in the record creates a genuine issue of material fact as to whether Defendants acted in a retaliatory nature to discharge Plaintiff. Plaintiff offers only speculation to rebut Defendant's evidence which is not enough to overcome Defendants' Motion. Accordingly, the Court will grant Defendants' Motion for Summary Judgment with respect to Plaintiff's workers' compensation retaliation claim.

### C. PSLL

Finally, Defendants seek summary judgment on Plaintiff's PSLL retaliation claim. (Moving Br. at 27.) Plaintiff argues that "the timing and temporal proximity between [his taking

sick leave and being discharged] could lead to an inference that Plaintiff was terminated in retaliation for requesting or using his earned sick leave." (Opp'n at 26.) Defendants counter that Plaintiff utilized his full paid-time-off during the week of February 7 through February 14, as well as his 3 days of unpaid time off, and there is no evidence that he was ever denied any paid sick leave, or that he was terminated because he took this time off from work in accord with the statute. (Moving Br. at 28.) It should be clear that Plaintiff does not dispute that Defendants abided by New Jersey's PSLL, but rather, that Defendants retaliated against him for using his sick leave by discharging him.

The PSLL requires an employer to provide earned sick leave to each employee working for the employer in the state. N.J.S.A. 34:11D-2(a). The PSLL further requires that "[f]or every 30 hours worked, the employee shall accrue one hour of earned sick leave." *Id.* This rate of accrual equates to 5.33 hours per month. The PSLL also provides that no employer shall take retaliatory personnel action or discriminate against an employee because the employee requests or uses earned sick leave. N.J.S.A. 34: 1 ID-4.

Plaintiff once again cites no evidence that could create a genuine issue of material fact as to whether Defendants discriminated against him because of his sick leave. Plaintiff relies on the same theories used to support his workers' compensation retaliation claim which the Court has already held are insufficient to defeat Defendants' Motion. *Ridgewood Bd. of Educ.*, 172 F.3d at 252 (holding that a non-movant cannot satisfy the duty to set forth specific facts showing that a genuine issue of material fact exists through speculation or conclusory allegations). Because Plaintiff has not set forth any facts or evidence to support his retaliation claim, the Court will grant Defendants' Motion for Summary Judgment with respect to Plaintiff's PSLL retaliation claim.

## V.      CONCLUSION

For the reasons stated above, the Court will GRANT Defendants' Motion for Summary Judgment.  An appropriate Order will follow.


Date: **July 12, 2023**

s/ Zahid N. Quraishi<br>
**ZAHID N. QURAISHI**<br>
**UNITED STATES DISTRICT JUDGE**